IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | * | |
| TIMOTHY L. HOCKENSMITH, | * | Chapter 7 |
|     Debtor | * | |
| | * | Case No.: 1-04-bk-05135 |
| FRANK B. SPIDEL, | * | |
|     Plaintiff | * | |
| | * | |
| v. | * | Adv. No.: 1-05-ap-00042 |
| | * | |
| TIMOTHY L. HOCKENSMITH, | * | |
|     Defendant | * | |
| | * | |

## OPINION

### Procedural History

Before the Court is the complaint of Frank B. Spidel ("Spidel") seeking an order denying a bankruptcy discharge to Timothy L. Hockensmith ("Debtor") under 11 U.S.C. § 727(a)(2), (3), (4) and (5).[1] Debtor filed his bankruptcy petition on August 24, 2004, listing Spidel as an unsecured creditor holding a claim on a "business loan" in the amount of $35,000.00. Spidel filed the instant complaint containing four counts on March 15, 2005. At Count One, the complaint alleges that within a year prior to filing his bankruptcy petition, Debtor transferred certain valuable property – a pickup truck, a motorcycle and certain "tools and valuable materials" – with the intent to hinder, delay or defraud other creditors. At Count Two, the complaint avers that Debtor failed to keep or preserve records of these transfers. In Count Three, the complaint alleges that Debtor made false oaths in his bankruptcy schedules by failing to

---

[1]This Court has jurisdiction pursuant to 28 U.S.C. §§157 and 1334. This matter is core pursuant to 28 U.S.C. §157(b)(2)(J).

report the filing of a prior bankruptcy petition [2] as well as his ownership of certain personal property valued at approximately $50,000.00. Finally, at Count Four, the complaint asserts that Debtor failed to sufficiently explain at the meeting of creditors ("341 meeting") the disappearance of certain assets.

Debtor filed an answer to Spidel's complaint generally denying the allegations. Trial of the matter was held on September 22, 2005. For the reasons set forth below, Debtor's discharge will be denied under Section 727(a)(2) and (a)(4).

## Factual Findings

In 2002, Debtor opened a business called "Hock's Custom Colors" ("HCC"), a corporation, which specialized in restoring and customizing motorcycles. From the date the business opened until June 2004 Spidel did welding work for HCC as an independent contractor. During that period, Spidel made loans to Debtor on three occasions totaling $19,000.00. Debtor used a portion of the loan proceeds to make improvements on his home, but the disposition of the balance of the funds is not of record. On January 16, 2004, Debtor executed a judgment note which acknowledged a debt to Spidel of $29,279.25.[3]

On July 19, 2004, Debtor sold a customized 1978 Chevrolet pickup truck to Winebrenner Motors in exchange for $500.00 and a release from liability on certain loans made to Debtor by

---

[2]I take judicial notice of the records of the Bankruptcy Court, which indicate that Debtor filed a Chapter 7 petition on April 8, 1998. He received a discharge in that case on July 28, 1998. He was not required to report the prior case on his petition in the current case because more than six years had elapsed between the filing of the prior case and the current case.

[3]According to the note, the loan did not include interest on the principal but did include additional amounts ($10,279.25) owed to Spidel as compensation for work he performed at HCC.

2

James Winebrenner ("Winebrenner").  Neither the terms of the loans from Winebrenner, nor the release of liability were reduced to writing, and the exact amount Debtor received is not of record. Although Debtor performed work for Winebrenner, he described himself as Debtor's friend. Title to the truck was transferred on August 24, 2004, the date the petition was filed. Winebrenner testified that the transfer of the truck satisfied any liability due from Debtor. Debtor did not report the transfer of the pick-up on the Statement of Financial Affairs ("SFA") and, an amendment disclosing the transfer was not filed until after Spidel questioned Debtor about the status of the pick-up at the 341 meeting.

At the hearing, Debtor was unable to provide information on the disposition of other assets used in his business. Spidel testified that at the time he terminated his relationship with HCC, an untitled "chopper" motorcycle ("the chopper") was located on the premises.  Debtor did not disclose an ownership interest in the chopper in his schedules, nor did he disclose the transfer of the chopper pre-petition.  However, Spidel introduced no evidence to establish that the chopper was owned by Debtor rather than by HCC.  Spidel also established that Debtor transferred a drill press used at HCC to an individual named Ron Markle for no consideration, but insufficient evidence was introduced to prove Debtor owned the equipment.

HCC is no longer in business, although the corporation has not been formally dissolved. A substantial number of valuable tools and pieces of equipment were kept at HCC's location before it ceased doing business, but the record does not identify who owned the items.  Some of the tools were owned by Spidel, some belonged to Debtor, and other equipment was owned by HCC.  As of the date of the hearing, Debtor testified that he was "storing" certain unidentified

pieces of equipment owned by HCC at his home, but he assigned no value to the corporation on his schedule of personal property.

In addition to ordinary household goods and furnishings, Debtor listed the following property valued at $3,800.00 on his schedule of personal property: "air compressor, blast cabinet, spray guns, miscellaneous tools, air table, tables and cabinets, engine hoist, [and] plasma cutter." Debtor did not state the number of spray guns that were in his possession on the date of his petition although at trial he admitted that he had as many as eight spray guns at HCC, each of which had a retail value of $600.00.

### Discussion

The Court concludes that the evidence adduced at trial established that Debtor should be denied a discharge pursuant to 11 U.S.C. § 727(a)(2) and (a)(4). Since the evidence introduced in support of the action under Section 727(a)(4) is more complex, I will address this count first.

*a.     Section 727(a)(4)*

"Sworn statements filed in any court must be regarded as serious business. In bankruptcy administration, the system will collapse if debtors are not forthcoming." *In re Jackson,* 2004 WL 2595900 at *9(Bankr. D. N.H.) (holding that debtor's failure to disclose annual income of $10,000.00 from close corporation and ownership of its stock provided basis for denial of discharge under Section 727(a)(4)). Section 727(a)(4) provides, in pertinent part, as follows:

a) The court shall grant the debtor a discharge, unless ...

(4) the debtor knowingly and fraudulently, in or in connection with the case--

(A) made a false oath or account;

11 U.S.C. § 727(a)(4)(A).
"Exceptions to discharge are narrowly construed in furtherance of the Bankruptcy Code's

4

Case 1:05-ap-00042-MDF    Doc 11    Filed 05/12/06    Entered 05/12/06 15:26:38    Desc
Main Document      Page 4 of 15

fresh start policy." *In re Umpierrez*, 121 F.3d 781, 786 (1st Cir. 1997). However, "the very purpose of certain [exceptions to discharge], is to make certain that those who seek the shelter of the bankruptcy code do not play fast and loose with their assets or with the reality of their affairs." *In re Schifano,* 378 F.3d 60, 66 (1st Cir. 2004). *See also In re Dawley*, 312 B.R. 765, 785, fn. 32 (Bankr. E.D. Pa. 2004). "[T]he fresh start policy is not the only policy objective which the Court must consider. Creditors are also entitled to be treated fairly." *In re Lang*, 246 B.R. 463, 468 (Bankr. D. Mass. 2000).

To deny a discharge because the debtor made a false oath or account under Section 727(a)(4), a court must find that: (1) the debtor made a statement while under oath, (2) the statement was false, (3) the statement related materially to the bankruptcy case, (4) the debtor knew the statement was false, and (5) the debtor made the statement with fraudulent intent. *In re Olson,* 916 F.2d 481, 484 (8th Cir. 1990); *In re Sowers*, 229 B.R. 151, 158 (Bankr. N.D. Ohio 1998). Each element must be proven by a preponderance of evidence. *See Grogan v. Garner,* 498 U.S. 279, 289, 111 S. Ct. 654, 660 (1991)( applying the preponderance of the evidence standard to an action for exception to discharge under Section 523 of the Bankruptcy Code). Under Section 727 (a)(4), intent can be established by circumstantial evidence, such as evidence drawn from a course of conduct. *In re Dolata,* 306 B.R. 97, 149 (Bankr. W.D. Pa. 2004). "[S]tatements made with reckless indifference to the truth are regarded as intentionally false." *In re Unruh,* 278 B.R. 796, 803 (Bankr. D. Minn. 2002) (failure to account for discrepancies between scheduled value and actual value of assets), *citing In re Smith*, 161 B.R. 989, 992 (Bankr. E.D. Ark. 1993).

*(1) Debtor made a statement while under oath.*

5

Case 1:05-ap-00042-MDF    Doc 11    Filed 05/12/06    Entered 05/12/06 15:26:38    Desc
Main Document      Page 5 of 15

A material false statement or omission made by a debtor on the schedules or the SFA constitutes a false oath or statement under Section 727(a)(4)(A), which may justify denial of a debtor's discharge. *In re Burnley,* 1999 WL 717215 *2 (Bankr. E.D. Pa.) *citing In re Chalik,* 748 F.2d 616, 618 (11th Cir.1984); *Farmers Co-op. Ass'n v. Strunk,* 671 F.2d 391, 395 (10th Cir. 1982) (internal citations omitted.). All of the statements alleged by Spidel to violate Section 727(a)(4)(A) were made in Debtor's schedules and the SFA.

### *(2) The statement was false.*

There are three "statements" that Spidel alleges form the basis for the denial of Debtor's discharge. First, Question (3) on the SFA asks whether a debtor had made payments aggregating over $600.00 on any debts within the one year period prior to filing his petition. Debtor's answer was "None other than on schedule 'J'." Debtor's statement in response to this question was false since he transferred a pick up truck to Winebrenner in exchange for $500 and the forgiveness of several thousand dollars in debt.[4] Second, Question (19) on the SFA asks a debtor to identify any bookkeepers or accountants used by him in the preceding two years. Debtor answered this question by marking a block indicating that he had employed no accountants during that period. In fact, Debtor had employed a tax accountant during the two-year period prior to the filing of his petition. Third, Debtor made a "statement" on schedule "B" identifying a small number of tools and equipment that he owned. His cryptic entry on schedule "B" states that he owned "spray guns" without specifying the number of such guns. Spidel testifed credibly that Debtor owned at least seven spray guns with a retail value of approximately $4,200.00.

---

[4] The exact amount of the debt to Winebrenner is not of record, but the evidence indicates that it approximated $5,000.00.

Case 1:05-ap-00042-MDF    Doc 11    Filed 05/12/06    Entered 05/12/06 15:26:38    Desc
Main Document      Page 6 of 15

Debtor did not rebut Spidel's testimony regarding the number of guns that he owned or their value. Further, he has not amended his schedule "B" to accurately state the number of spray guns or their value.[5] Debtor's failure to report these assets accurately and fully constitutes a false statement.[6] *See In re Zimmerman*, 320 B.R. 800, 810 (Bankr. M.D. Pa. 2005) (a debtor's failure to specify the accurate quantity of a particular asset on his schedules amounts effectively to a concealment of assets). Thus, Debtor made false statements on his petition by failing to report the transfer of the truck, by failing to identify bookkeepers or accountants he employed pre-petition, and by failing to fully identify the number of valuable tools that he owned.

### *(3) The statement related materially to the bankruptcy case.*

A statement regarding the value of property is a statement that is material to a bankruptcy case. "A false oath or statement is material if it concerns discovery of assets, business transactions, and/or past business dealings of the debtor or the existence or disposition of the debtor's property." *Casey v. Kasal,* 223 B.R. 879, 884 (E.D. Pa. 1998), *citing In re Henderson*, 134 B.R. 147, 160 (Bankr. E.D. Pa. 1991). "[T]here is little that will prove to be immaterial for purposes of required disclosure if it aids in understanding the debtor's financial affairs and

---

[5]In this context, it is noteworthy that Debtor did amend his schedule "B" to add "*3* bar stools," "*2* craftsman toolboxes" and "*2* steel boxes of drawers full of parts." Thus he was aware of the need to state the specific number of each asset on the schedules.

[6]Again, Spidel testified credibly that there were a number of tools and pieces of equipment on the HCC premises, some of which belonged to Spidel and some of which belonged to HCC. Debtor conceded that he was holding some of HCC's tools "in storage" and that he would need to consult his "records" before he could distinguish between equipment he owned personally from equipment owned by HCC. However, except for the spray guns, Spidel did not specifically identify any tools or equipment that either belonged to Debtor on the date of his filing of the petition or that Debtor transferred to third parties between the date Spidel left HCC and the date of the petition. Obviously, without evidence to identify the tools, I cannot conclude that Debtor made false statements in his schedules by omitting these items.

7

transactions." *In re Coombs,* 193 B.R. 557, 567 (Bankr. S.D. Cal. 1996). In order for a falsehood or omission to be material, it need not result in a detriment to creditors. *Scimeca,* 169 B.R. at 543; *Chalik,* 748 F.2d at 618; *Strunk,* 671 F.2d at 396; *In re Arcuri,* 116 B.R. 873, 881 (Bankr. S.D. N.Y. 1990). The debtor must make full disclosure, "even of seemingly worthless assets." *Arcuri,* 116 B.R. at 881; *Chalik,* 748 F.2d at 618 ("the recalcitrant debtor may not escape a section 727(a)(4)(A) denial of discharge by asserting that the admittedly omitted or falsely stated information concerned a worthless business relationship or holding."); *In re Mascolo,* 505 F.2d 274, 278 (1st Cir.1974) ("knowing and fraudulent omissions of a bank account, whether or not it is closed at the time of filing, warrants the denial of discharge.") These cases readily support the conclusion that Debtor's false statements regarding the Chevrolet pickup and the number and value of his tools relate materially to Debtor's bankruptcy case.[7]

### *(4) Debtor knew the statement was false.*

The evidence demonstrates that the Chevrolet pickup was a unique, valuable and significant asset of the Debtor. Spidel's testimony showed that Debtor invested nearly $10,000.00 in obtaining the parts used to customize the truck. The labor required to install those parts undoubtably was significant and would have added to the truck's overall value. The customizing work was performed to showcase the craftsmanship of the services performed by HCC. Debtor made special arrangements with Winebrenner to transfer the truck, and he

---

[7]While the Court does not condone the failure to provide the name of a tax accountant in answer to Question 19 on the SFA, in this instance the omission did not relate materially to the bankruptcy case. There was no evidence introduced that the tax accountant, if he had been identified on the petition, would have had information pertaining to the issues raised in Spidel's complaint, such as knowledge about tools or other assets owned by Debtor on the date of the petition.

8

received substantial consideration at a time when his personal finances were in shambles.[8] Accordingly, Debtor's self serving testimony that he simply forgot about that transfer, or that he was confused about when the transferred occurred is not credible. Therefore, I conclude that Debtor knew that he made a false statement when he failed to disclose the transfer of the truck to Winebrenner.

*(5) Debtor made the statement with fraudulent intent*.

The requisite degree of fraudulent intent is shown if the debtor "engaged in behavior which displayed a reckless and cavalier disregard for the truth." *Dolata*, 306 B.R. at 149, *citing In re Wilson,* 290 B.R. 339 (Bankr. C.D. Ill. 2002). "A reckless disregard of both the serious nature of the information sought and the necessary attention to detail and accuracy in answering may rise to the level of fraudulent intent necessary to bar a discharge." *In re Mazzola,* 4 B.R. 179, 182 (Bankr. D. Mass. 1980). A Court may infer fraud from a course of conduct. *In re Guthrie,* 265 B.R. 253, 263 (Bankr. M.D. Ala. 2001). "[A] series or pattern of errors or omissions may have a cumulative effect giving rise to an inference of an intent to deceive." *In re Parnes*, 200 B.R. 710, 714 (Bankr. N.D. Ga. 1996). *See also In re Stevens,* 250 B.R. 750, 755 (Bankr. M.D. Fla. 2000); *Behrman Chiropractic Clinics, Inc. v. Johnson,* 189 B.R. 985, 994 (Bankr. N.D. Ala. 1995). Often, resolution of the question of whether a false statement was made with intent to deceive will turn on the Court's assessment of the demeanor and credibility of the debtor. *West*, 328 B.R. at 750 (citing *In re Watman,* 301 F.3d 3, 8 (1st Cir. 2002). See

---

[8]Winebrenner testified that he subsequently sold the pick-up truck for between $4,000.00 and $5,000.00.

also *In re Burgess,* 955 F.2d 134, 137 (1st Cir.1992) ("determination concerning fraudulent intent depends largely upon an assessment of the credibility and demeanor of the debtor.")

Had Debtor not testified, the Court might not so readily find the omissions on his schedules sufficient to demonstrate an intent to defraud. However, Debtor's testimony on the stand was generally elusive, combative and, in short, far from credible. Accordingly, his testimony lead me to conclude that he made these false statements in schedule "B" and the SFA with intent to deceive. The holding in this case is heavily influenced by Debtor's lack of credibility. Therefore, it is appropriate to provide several examples from the transcript to demonstrate Debtor's lack of credibility.

Spidel's attorney, Christopher Ferro, questioned Debtor regarding the circumstances surrounding the transfer of the pickup to Winebrenner and the reason why Winebrenner was not listed as a creditor on Debtor's schedules.

Ferro: "And it was an understanding that by transferring that truck to Mr. Winebrenner, that you no longer owed him any money, correct?"

Debtor: "Not necessarily."

Ferro: "So you did still owe him money?"

Debtor: "Not necessarily." (N.T. 104)

Debtor's refusal to answer this simple question about whether the transfer of the truck satisfied the debt amply demonstrates the general evasiveness of his testimony. His testimony also contradicted that of Winebrenner who pointedly stated that the debt was fully satisfied by the transfer of the pick-up truck and the payment of $500.00. Debtor either failed to list Winebrenner as a creditor or failed to disclose the transfer that satisfied the debt. When

10

confronted with the fact that he neither disclosed the transfer nor listed Winebrenner as a creditor, Debtor explained that he omitted Winebrenner because he knew Winebrenner would not sue him to collect the debt. (N.T. 102). The intentional failure to list a creditor on a bankruptcy schedule can be evidence of fraud in certain instances. *See In re Barfield,* 285 B.R. 559 (Bankr. S.D. Ga. 2002) (evidence of "fraud or intentional design" in omitting creditor from schedules would be sufficient to bar debtors from reopening case to add creditor); *accord In re Wilkins*, 185 B.R. 624 (Bankr. M.D. Fla. 1995). *See also Samuel v. Baitcher*, 781 F2d 1529 (11th Cir. 1986) (in a 523(a)(3) case, dischargeability is denied when debt is not scheduled "because of fraud or intentional design"). In the instant case, while I do not find that Debtor's knowing omission of Winebrenner from his schedules was intended to defraud Spidel specifically, it is nonetheless relevant to the issue of Debtor's general credibility in his bankruptcy case.

 Debtor also responded in less than a forthright manner when questioned by Spidel's counsel about the date on which the pick-up truck was transferred. Debtor did not directly respond to the question and stated that "[i]t's probably on the receipt." (N.T. 93) Eventually, Ferro simply asked whether Debtor had transferred the truck before or after he filed his petition. Debtor responded that "[i]t was a little after, I believe." (N.T. 94) This statement clearly was false and contradicted all other evidence in the case, including Debtor's testimony at the 341 meeting that the transfer had occurred pre-petition. Later Ferro asked Debtor why he did not reveal that he had transferred the truck pre-petition until he amended the SFA in February 2005. Continuing his retreat from his testimony at the 341 meeting, Debtor testified that "when I filed bankruptcy, I didn't have any intentions of selling the truck" (N.T. 119). In fact, it was later conclusively established that Debtor had transferred the truck to Winebrenner on July 19, 2004, a

11

month *before* he filed his bankruptcy petition.[9] From this testimony I conclude that Debtor demonstrated a reckless and cavalier disregard for the truth when he verified his schedules and statements and made knowingly false statements in testimony before this Court about their preparation. Thus, I find that he possessed the intent requisite to justify a denial of his discharge under 11 U.S.C. §727(a)(4). Having been provided with evidence sufficient to satisfy all the elements of section 727(a)(4), I conclude that the instant Debtor knowingly and fraudulently made a false oath or account sufficient to sustain Spidel's objection to Debtor's discharge.

    b.    *§727(a)(2)*

Spidel also has established that Debtor's discharge should be denied under Section 727(a)(2). A debtor's discharge shall be denied if, with intent to hinder, delay, or defraud a creditor, he transfers, removes, or conceals property of the debtor in the year prior to the filing of the bankruptcy petition. 11 U.S.C. § 727(a)(2). The plaintiff bears the burden of establishing by a preponderance of the evidence that the debtor (1) transferred, (2) property of the debtor, (3)within one year prior to the bankruptcy filing, (4) with intent to hinder, delay, or defraud a creditor. *In re Lang*, 246 B.R. 463, 468 (Bankr. D. Mass. 2000).

There is no dispute that Debtor transferred his customized 1978 Chevrolet pick-up truck to Winebrenner. The documentation and testimony by Winebrenner clearly establish that the pick-up truck was sold by Debtor on July 19, 2004, before he filed his petition and that title was transferred on August 24, 2004, the day the petition was filed. By this transfer, Debtor disposed of unencumbered property of the estate. The only element that Debtor may reasonably dispute is

---

[9]Later still, Debtor made this nonsensical statement: "I didn't intentionally sell the truck before filing bankruptcy or after." (N.T. 161).

12

Case 1:05-ap-00042-MDF    Doc 11    Filed 05/12/06    Entered 05/12/06 15:26:38    Desc
Main Document      Page 12 of 15

whether he intended to hinder, delay or defraud his creditors by selling the pick-up to Winebrenner. Of course, no debtor will admit that his intent was improper, but the Court may consider the surrounding facts and circumstances and draw inferences from those actions. *In re Dolata*, 306 B.R. at 149.

The Court may infer intent from the facts showing the existence of certain "badges" of fraud. Courts have considered these factors in determining whether a debtor possessed the requisite intent to hinder, delay, or defraud a creditor by transferring the property under several scenarios, including both Section 548(a)(1), *see In re Lease-A-Fleet, Inc.*, 155 B.R. 666, 674 (Bankr. E.D. Pa.1993), and Section 727(a)(2), *see In re Ishkhanian*, 210 B.R. 944, 951-53 (Bankr. E.D. Pa.1997) and *In re Cohen*, 142 B.R. 720, 728 (Bankr. E.D. Pa. 1992). These badges of fraud include some of the following factors: (1) lack or inadequacy of consideration; (2) the family, friendship or close associate relationship between the parties; (3) the retention or possession, benefit or use of the property in question, although title exists in another entity; (4) the attempt by the debtor to keep the transfer a secret; (4) the financial condition of the party sought to be charged both before and after the transaction in question; (5) the existence or cumulative effect of a pattern of series of transactions or a course of conduct after the incurring debt, onset of financial difficulties, or pendency or threat of suit by creditors; and (6) the general chronology of events and transactions under inquiry. *In re Lang,* 246 B.R. at 469; *In re Main, Inc.*, 213 B.R. 67, 79 (Bankr. E.D. Pa.1997).

Several badges of fraud are present in this case. Debtor transferred the pick-up truck to a friend for a nominal amount and forgiveness of certain alleged loans, thus removing the property from the estate. Further, Debtor failed to disclose the transfer on the SFA until questioned about

13

the disposition of the truck at his creditors' meeting. Debtor was not credible when he testified about the transfer of the truck or when he attempted to explain why it was not disclosed in the SFA. The transfer of the truck to Winebrenner was not an isolated incident. It was one of several transactions in which items used in the motorcycle customizing business, owned either by Debtor or his wholly-owned corporation, were transferred to other parties in contemplation of filing bankruptcy. From this evidence, I find that Debtor intended to conceal the transfer of the pick-up truck from the Chapter 7 trustee and his creditors, and I conclude that Debtor's discharge also should be denied under Section 727(a)(2). *See In re Lang*, 246 B.R. at 469-70 (denying discharge of debtor who transferred property to family member for insufficient consideration and failed to disclose the transfers and whose testimony was not credible).[10]

---

[10] Debtor and Winebrenner testified that the pick-up was transferred to Winebrenner to satisfy certain prior loans. The details of these loans are murky with each party possessing a somewhat different understanding of their terms. Debtor also testified that he expected to obtain further work from Winebrenner. Under these circumstances, I conclude that the pick-up was transferred to Winebrenner as much as to maintain the friendship as to satisfy the loans.

14

## Conclusion

For the reasons set forth above, Debtor's discharge will be denied for knowingly and fraudulently making a false oath and account and for transferring property with intent to hinder, delay, and defraud creditors within the year prior to the filing of his bankruptcy petition.

BY THE COURT,

*Mary D. France*
Bankruptcy Judge

Date: May 12, 2006

*This document is electronically signed and filed on the same date.*